**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| ALFREDO FUENTES, | : | Case No. 3:18-cv-00187 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

I.  **Introduction**

The Social Security Administration provides Supplemental Security Income to individuals with a "disability" (among other eligibility requirements). *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). A "disability" in this context means "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job ("substantial gainful activity"). 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Plaintiff Alfredo Fuentes has health problems that, at a minimum, interfere with his ability to perform full-time work. He protectively filed[2] an application for

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] A protective filing date is the date an applicant first contacted the Social Security Administration about filing for disability benefits. It may be used to establish an earlier application date than the date the Social Security Administration actually received the claimant's signed application. *See* http://www.ssa.gov/glossary.

Supplemental Security Income in August 2015 asserting that his health problems constitute a disability and qualified him to receive Supplemental Security Income. Administrative Law Judge Administrative Law Judge (ALJ) Elizabeth A. Motta found that Plaintiff did not have a disability and denied his application for benefits.

Plaintiff now challenges ALJ Motta's decision. He argues that the ALJ unreasonably weighed the opinions of his treating psychologist Erendira Lopez-Garcia, Psy.D., and another medical source, Darnel Ladson, D.O.

The Commissioner argues that the ALJ reasonably weighed the opinions of Dr. Lopez-Garcia and Dr. Ladson, and that substantial evidence supports the ALJ's decision.

**II.     Background**

**A.     <u>Plaintiff and His Testimony</u>**

Plaintiff was forty years old on the date he filed his application for benefits. He was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). ALJ Motta determined that he was unable to communicate in English and thus fell under the illiteracy Regulation. (Doc. #6, *PageID* #77 (citing 20 C.F.R. § 416.964)). His jobs in the past have included forklift operator and material handler.

ALJ Motta held an administrative hearing during which Plaintiff testified through an interpreter. Plaintiff explained that he is married and has one child (then age twenty-one) and four younger children.

Plaintiff testified that he began having memory problems in 2016 when he got cancer. He underwent kidney surgery, involving the removal of a majority of one kidney.

2

His cancer was in remission at the time of the ALJ's hearing in 2017.

A psychiatrist prescribes medication that Plaintiff takes for depression. Plaintiff also takes medication for high blood pressure, cholesterol, sleeping, asthma, and migraine headaches. He testified that the depression medication helped keep him stable. He has a migraine usually once a week "but they last two or three days." (Doc. #6, *PageID* #101). When he has a migraine, light bothers him and he has to be in the dark. He lies down when this happens. His depression sometimes makes him feel like crying despite medication. He gets easily frustrated. *Id*. at 110.

Plaintiff's daily activities include going outside and walking "a little bit." *Id*. at 102. He does not feel safe making simple meals. He does not do any chores, grow vegetables, mow, or rake. He does not use a computer, a tablet, or the internet. He sometimes looks things up on his phone but mostly asks his children to help him look things up. He watches very little TV because he has difficulty focusing and does not get anything out of it. *Id*. at 110. Perhaps his sole regular activity is attending church on Saturdays.

Although he can sometimes go alone to the grocery store, he cannot go at night because he gets confused at night. He has trouble sleeping during the night. He wakes up every two hours, and he sometimes has trouble falling to sleep. He explained, "With the nerves I stay up a lot during the night …." *Id*. at 107. He also has problems thinking "bad things" at night. *Id*. at 106. He worries about income and his family. The depression medication helps him stop thinking at night. He feels uncomfortable around people—"I'm not safe," he thinks. *Id*. This causes him to isolate himself. He will get

3

together with others about once a week.

Plaintiff told the ALJ that he has difficulty completing things he starts. He testified, "When I start to do something, I get desperate and then I get anxious or desperate and I don't finish it." *Id*. at 108. He also has fatigue and low energy. He takes a nap about once a day.

B. **Medical Evidence**

Dr. Lopez-Garcia first saw Plaintiff for treatment in October 2009. (Doc. #6, *PageID* #477). In May 2010, she wrote a letter explaining that Plaintiff had reported feeling tired, having low motivation and energy, and a depressed mood. He gets easily irritable, has anxiety, and feels sad over stressful events and his health. *Id*. Plaintiff also reported suicidal ideations without specific plan or attempt. *Id*. Dr. Lopez-Garcia diagnosed Plaintiff with depressive mood recurrent and generalized anxiety disorder. *Id*. at 478.

In August 2013, Dr. Lopez-Garcia wrote a letter documenting her treatment of Plaintiff in 2013 up to that point in time. *Id*. at 476. Dr. Lopez-Garcia she had treated Plaintiff on seven different occasions by focusing on alleviating his severe depression and anxiety. *Id*. Treatment objectives consisted of improving his depressed mood, monitoring medication compliance, monitoring his suicidal ideation, and alleviating his anxiety. *Id*. Dr. Lopez-Garcia indicated that his condition was improving but that his mood was still fluctuating and had not improved "at the commonly expected level." *Id*. She opined "that currently, his lack of concentration, depressed mood, lack of energy and motivation, and extreme anxiety affect his daily functioning activities, social interactions,

and potentially work performance." *Id*. Dr. Lopez-Garcia diagnosed Plaintiff with major depressive disorder with anxious distress and generalized anxiety disorder. *Id*.

In October of 2015, Dr. Lopez-Garcia wrote another letter summarizing Plaintiff records from January 14, 2014 to September 28, 2015. *Id*. at 653. She noted that she was a licensed psychologist and that she was currently the Associate Director of Clinical Training for Office of Disability Services. She also worked as a staff psychologist at the University Psychological Services. *Id*.

Dr. Lopez-Garcia reported that she observed that Plaintiff had made significant attempts to improve his improve his functioning through psychotropic medication, psychiatric monitoring, and psychological therapy. *Id*. She noted, however, that there was little improvement. His mood fluctuated and would abruptly deteriorate with any perceive threat of illness or environmental stressor. *Id*. He was easily confused with directions and engaged in catastrophic thoughts that negatively impacted his ability to function. *Id*. Dr. Lopez-Garcia recounted that in 2012, Dr. Lorena Kvalheim, Psy.D. cognitive testing that showed Plaintiff would have significant difficulties with memory, attention, and verbal comprehension. *Id*. at 654.

In May 2016, Dr. Lopez-Garcia wrote a fourth letter concerning her treatment of Plaintiff's mental-health conditions. *Id*. at 740. She reported that she had been treating Plaintiff since October 2009 to help him alleviated his symptoms of severe depression and anxiety. She explained that Plaintiff had low motivation and energy, became easily tired and irritable, and had problems with anxiety and sadness. *Id*. Dr. Lopez-Garcia also confirmed symptoms such as anhedonia, feelings of worthlessness, trouble focusing,

5

and suicidal ideations.  *Id*.  She opined that Plaintiff's lack of concentration, depressed mood, lack of energy and motivation, and extreme anxiety would affect his daily functioning, social interactions, and potentially his work performance.  *Id*. at 741.

Dr. Ladson completed a medical source statement concerning Plaintiff's mental-work abilities in June 2016.  *Id*. at 821.  He found that Plaintiff had no limitations his ability to socially interact at work and was mildly impaired in many other areas of mental-work functioning.  *Id*. at 822.  Plaintiff had a moderate limitation in maintaining attention and concentration, performing at expected production levels, behaving predictably, and tolerating customary work pressures.  *Id*. at 822-23.  Dr. Dodson opined that Plaintiff's mental condition would likely deteriorate if placed under the stress of full-time employment.  *Id*. at 823.

Plaintiff also received mental-health care at TCN Behavioral Health, which will be discussed below.  *Infra*, § IV.

### III. Standard of Review and ALJ Motta's Decision

Review of ALJ Motta's recent decision considers whether she applied the correct legal standards and whether substantial evidence supports her findings.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Lawson v. Comm'r of Soc. Sec.*, 3:17cv119, 2018 WL 3301421, at *4 (S.D. Ohio 2018) (Ovington, M.J.), *Report & Recommendations adopted*, 2018 WL 3549787, at *1 (S.D. Ohio 2018) (Rice, D.J.).

6

The ALJ considered the evidence and evaluated Plaintiff's disability assertions under each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. Her more pertinent findings began at step two where she found that Plaintiff had numerous severe impairments, including (in part) cancer in remission, migraines, hypertension, affective disorder, and anxiety disorder with cognitive symptoms. At step three, the ALJ concluded that Plaintiff's impairments did not automatically qualify him for benefits. (Doc. #6, *PageID* #s 64-66).

At step four, the ALJ concluded that the most Plaintiff could do (his "residual functional capacity," *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002)), consists of "light work with many limitations—for example, "lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; … no exposure to hazards such as dangerous machinery or unprotected heights; no loud noise level…; no complex detailed instructions but only simple instructions; no written instructions but instruction by only demonstration; simple, repetitive tasks; low stress work with no strict production quotas or fast pace and only routine work with few changes in the work setting; no contact with the public as part of job duties; and only occasional contact with coworkers and supervisors, including not teamwork or over-the-shoulder supervision. *Id*. at 166. These limitations precluded him from working, as he had in the past, as a forklift operator or material handler.

Yet, at step five the ALJ found that Plaintiff can perform many jobs (nearly two million) that exist in the national economy. These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 77-

7

78.

## IV. Discussion

Plaintiff contends that the ALJ's decision should be reversed because she failed to articulate good reasons for rejecting the treating-source opinions provided by psychologist Dr. Lopez-Garcia and Dr. Ladson.

### A. **Treating Medical-Source Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2) ); *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). If the treating medical source's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citation omitted); *see Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)

8

(quoting, in part, 20 C.F.R. § 404.1527(d)(2)).

"[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are ' sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting, in part, Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

B.   **Dr. Ladson**

The ALJ declined to place controlling weight on Dr. Ladson's opinions and instead placed some weight them. (Doc. #6, *PageID* #76).

The ALJ reasonably weighed Dr. Ladson's opinions regarding Plaintiff's mental-work limitations, and the provided good reasons for giving them some weight. The ALJ first found that Dr. Ladson's opinions were not entitled to controlling or deferential weight under the regulations and then properly considered the regulatory factors by recognizing that Dr. Ladson was Plaintiff's treating source. The ALJ correctly noted that Dr. Ladson's treatment notes were not included in the current file but she noted that they were included in his previous application for disability benefits as Exhibit B2F. *Id*.

The ALJ gave some weight to Dr. Ladson's finding that Plaintiff had moderate limitation with regard to tolerating work pressure and that his condition would likely deteriorate under stress of full-time work, while also indicating he was not likely to be absent from work. She reasonably explained that, overall, this suggested that he should be able to work in a low-stress environment. *Id*.

The ALJ also explained that Dr. Ladson's overall findings and the tenor of his

9

assessment weighed against any implication that Plaintiff was disabled due to his mental impairments. This was a reasonable description of Dr. Ladson's report in light of the following. Dr. Ladson opined that Plaintiff had no limitations in his ability to engage in social interaction; he had mild limitation in four out of six areas of his ability to concentrate and persist with moderate limitations in the remaining two abilities. *Id*. at 822. Dr. Ladson concluded that Plaintiff had no marked or extreme limitations in any of the work abilities identified in the form he completed. *Id*. at 821-23. He also opined that Plaintiff would not be likely to have partial or full-day work absences five or more days per month. The only hint towards a disabling impairment is found in Dr. Ladson's stated that Plaintiff's mild depression "may at most limit him when his concentration is poor due to increased anxiety…." *Id*. at 823. When compared with the other mild or moderate limitations Dr. Ladson's identified in his report, it was reasonable for the ALJ to find that the overall findings in the report and tenor of his assessment "weighed against any implication that Plaintiff was disabled due to his mental impairments." *Id*. at 76. The ALJ, moreover, found Plaintiff to be more limited in the area of social interactions than Dr. Ladson found bases on his language barrier and shyness she observed during the hearing. She therefore reasonably limited Plaintiff to no contact with the public, only occasional contact with coworkers and supervisors, including no teamwork and no over-the-shoulder supervision. *Id*. at 66, 76.

While the ALJ did not repeat her discussion of the TCN medical records on the page discussing Dr. Ladson's opinions, *id*. at 76, she referenced her earlier detailed discussion of the records. The ALJ specifically recognized that Dr. Ladson's opinion

suggested Plaintiff could work with a low-stress environment. It was not error for the ALJ to omit repetitive discussion of the TCN medical records especially when a full understanding of the ALJ's reasons for placing some weight on Dr. Ladson's opinion is readily obtained upon a reading of the ALJ's decision. *Id*. at 72, 74, 76; *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole). Plaintiff's mental status examination frequently resulted in unremarkable findings along with a euthymic mood. *Id*. at 616-19, 781-84.

The ALJ acknowledged that TCN treatment notes continued to show Plaintiff's reports of variable sleep, decreased appetite, depression related to his denial of disability benefits, and concerns related to his physical health. *Id*. at 72. However, the ALJ noted that Plaintiff continued to have normal mental status examinations with euthymic mood in July 2014, October 2014, January 2015, April 2015, July 2015, October 2015, January 2016, March 2016, June 2016, and September 2016. *Id*. (citing 604, 606, 624-38, 640-47, 762, 764, 766, 789-818). The ALJ also considered that Plaintiff frequently reported that he was compliant with medications, had no side effects, and that his medications helped relax him. For example, Plaintiff reported in June 2016 that he continued to have ups and downs with occasional symptoms of anxiety and depression. *Id*. at 854. But he also reported, "everything is good…" except he did not have his medication on time. *Id*. at 854-55. He denied hallucinations, mania, or suicidal ideation. *Id*. And his mental status examination was again normal with a euthymic mood. *Id*. Similarly, in September 2016, Plaintiff's mental status examination was stable with a euthymic mood, and he again reported that his mood was stable, denied anxiety, and was compliant with

11

medications with no side effects. *Id*. at 862-64.

Plaintiff contends that substantial evidence does not support the ALJ's evaluation of Dr. Ladson's opinion because the ALJ relied on deficient mental health treatment notes from TCN. Plaintiff acknowledges that "treatment notes from TCN do not reveal significant problems," but argues that the records merely included computer-generated paragraphs and seemingly endless field of checkboxes and essentially gave no information whatsoever. Plaintiff's criticism of the TCN treatment notes does not undermine the ALJ's reliance on these records in assessing the opinion evidence. Contrary to Plaintiff's contention, the TCN treatment records were not merely computer-generated paragraphs, but instead included psychiatric and pharmacological progress notes with narrative discussion sections, in addition to the check box format indicating normal mental status exam findings. *See id*. at 596-647, 753-818, 852-64. Indeed, the ALJ correctly explained that the TCN treatment notes included Plaintiff's reported symptoms, including problems with sleep and fluctuating mood related to situational stressors, but also noted his frequent reports that he was compliant with his prescribed medication, the medication helped relieve his symptoms, and he had no side effects. *Id*. at 72, 74. Thus, the ALJ properly considered the TCN treatment records in weighing Dr. Ladson's opinions.

Accordingly, the ALJ provided good reasons supported by substantial evidence for the weight she placed on Dr. Ladson's opinions.

## C. **Dr. Lopez-Garcia**

Plaintiff contends that the ALJ failed to provide good reasons for the weight he

placed on the opinions Dr. Lopez-Garcia documented in her three letters.

The ALJ declined to place controlling weight on Dr. Lopez's opinions in her letters of August 2013 and May 2016 and instead ALJ placed some weight on these opinions. The ALJ also gave some weight to the opinions Dr. Lopez expressed in her letter of October 2015. *Id*. at 75-76, 476, 653-54, 740-41.

The ALJ reasonably gave some weight to Dr. Lopez-Garcia's opinions pursuant to the regulatory factors. The ALJ recognized that Dr. Lopez-Garcia was Plaintiff's treating psychologist for several years, thus recognizing her specialization and the length and nature of her treatment relationship with Plaintiff. *See id*. at 75; *see also* 20 C.F.R. §§ 416.927(c)(5); 416.927(c)(2). The ALJ explained that she discounted Dr. Lopez-Garcia's opinions because they "did not provide specific limitations in mental functioning nor did she explicitly state that [Plaintiff] was unable to perform any work because of her impairments." (Doc. #6, *PageID* #75). A straightforward reading of Dr. Lopez-Garcia's August 2013 and May 2016 letters confirms the absence of such information or opinions. In these letters, she mentioned work but only to say that Plaintiff's mental-health problems would potentially affect his work performance. *Id*. at 476, 740-41.

The ALJ noted that Dr. Lopez-Garcia heavily implied that Plaintiff had significant difficulties in terms of cognitive functioning. *Id*. at 75. However, the ALJ reasonably noted that the record did not contain treatment records from Dr. Lopez-Garcia to substantiate these findings. *Id*. at 75; *see* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give to that opinion"). The ALJ

13

explained, moreover, that although Dr. Kvalheim's evaluation (part of Plaintiff's previous application for benefits) found moderate cognitive impairment, TCN treatment records contain no findings related to Plaintiff's cognitive functioning. *Id*. (citing 596-647, 753-818, 852-64). The ALJ also reasonably observed that TCN records document normal cognitive findings despite Plaintiff's reports of memory issues. *Id*.

The ALJ also reasonably discounted Dr. Lopez-Garcia's opinions in the October 2015. The ALJ explained that she gave some weight to Dr. Lopez-Garcia's letter dated in October 2015, to the extent that it indicated Plaintiff required some limitations in mental functioning. *Id*. at 76. The ALJ also reasoned that, as with Dr. Lopez-Garcia's other letters, her October 2015 letter failed to include progress notes to substantiate her findings and was contradictory to the records in evidence from TCN. *Id*. And again, the TCN records consistently showed normal mental status exam findings—a proper consideration under the regulations. *See* 20 C.F.R. §§ 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give to that opinion"); 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

Plaintiff maintains that substantial evidence fails to support the ALJ's evaluation of Lopez-Garcia's letters for the same reason he raised with respect to Dr. Ladson's opinion—because the ALJ erred in relying on TCN mental health notes. However, as discussed above, the ALJ properly relied on the TCN treatment notes. Contrary to Plaintiff's contention, the TCN treatment notes were not non-descriptive, computer-

14

generated paragraphs and checkboxes with essentially no information whatsoever. Instead, the TCN treatment notes included details regarding Plaintiff's reports about his mood and other symptoms, his compliance with prescribed medication, that medication helped relieve his symptom, that he had no side effects, and had generally normal mental status examinations. *Id*. at 72, 74; *see id*. at 596-647, 753-818, 852-64.

Plaintiff references Dr. Lopez-Garcia's "notes" stated in her opinion letters and claims these were detailed findings about his mental health. Yet, the ALJ correctly recognized that the record did not contain any treatment notes from Dr. Lopez-Garcia to substantiate her findings. Plaintiff also fails to show that any findings indicated in Dr. Lopez-Garcia's letters undermined the ALJ's evaluation of her letters in light of the medical record and lack of supporting treatment notes from Dr. Lopez-Garcia.

And the ALJ appropriately discounted Dr. Lopez-Garcia's letters because she did not provide specific mental functioning limitations. Notably, the ALJ considered that Dr. Lopez-Garcia did not explicitly indicate that Plaintiff was unable to perform any work because of her mental impairments. *Id*. at 75. Plaintiff also argues that Dr. Lopez-Garcia's findings at the very least support the limitations opined by Dr. Ladson. As discussed above, the ALJ reasonably weighed Dr. Ladson's opinion and was not required to adopt every limitation verbatim simply because she gave some weight to the doctor's opinion. *See Poe*, 342 Fed. App'x at 157 (the ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. . . .") (citations omitted).

In sum, the ALJ provided good reasons supported by substantial evidence for

15

placing some weight on Dr. Lopez-Garcia's opinions.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

2. The case be terminated on the Court's docket.


August 27, 2019                                          *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).